MICHAEL MACHAT (Bar No. 109475),
Michael@machatlaw.com
MACHAT & ASSOCIATES, PC
8730 W. Sunset Blvd., Ste. 250
West Hollywood, California 90069
Telephone: (310) 860-1833

Attorneys for Plaintiff
Vampire Family Brands, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DISTRICT**

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>E & J. GALLO WINERY and DOES 1 – 20,<br><br>Defendants. | CASE NO. 2:26-cv-11110-ODW-AS<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, INDUCING TRADEMARK INFRINGEMENT, and CONTRIBUTORY TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff VAMPIRE FAMILY BRANDS, LLC hereby alleges and asserts:

**<u>JURISDICTION AND VENUE</u>**

1. Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2. This action arises under the Trademark Laws of the United States, including particularly, Section 43 of the Lanham Act, 15 U.S.C. §1125. Jurisdiction

is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.* Venue is proper in this District under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims asserted are occurring within this District.

**THE PARTIES**

3. Plaintiff VAMPIRE FAMILY BRANDS, LLC ("VAMPIRE FAMILY BRANDS") is a Delaware Limited Liability Company with its main business office located in Los Angeles County, California.

4. Defendant E. and J. Gallo Winery ("Gallo") is upon information and belief, a California Corporation. Gallo, based in Modesto, California, is perhaps the largest winery in the United States, and it markets, advertises and sells its wine throughout the country, including within this district.

5. Gallo is the brand owner of APOTHIC, a wine it created after studying and observing Plaintiff's VAMPIRE branded wines and spirits for years.

6. Plaintiff owns a family of VAMPIRE and VAMPIRE related registered trademarks, including the mark VAMPIRE for wine, DRACULA for wine, THE COUNT for wine (amongst other marks) as well as Registered Trademark No. 6869456 for product packaging comprising a stylized black cape with red lining adorning a bottle, (the "Vampire Cape.") The mark appears on the trademark registration as pictured here:



7. The Vampire Cape is trademarked for wine and alcoholic beverages except beer. A copy of the trademark registration is attached as Exhibit A.

8. Despite the fact that Plaintiff has a trademark registration for a Vampire Cape, and even though Plaintiff has sold its VAMPIRE Wine with Vampire Cape as part of its packaging for VAMPIRE branded wine for approximately ten years at the national chain Cost Plus World Market, with 52 of its approximate 250 locations in California, including one in Modesto, California, Defendants decided to copy and steal Plaintiff's registered trademark and trade dress for a Vampire Cape to promote its sales of APOTHIC wine.

9. Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 20 inclusive and therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained. Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by the conduct of such defendants.

10. At all times herein mentioned, Plaintiff is informed and believes and based thereon alleges each of the defendants sued herein, were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the purpose, course and scope of such agency and employment, and with the authority, permission and consent of their co-defendants.

## I. FACTS GIVING RISE TO THIS ACTION

### A. Plaintiff's Vampire Family Trademarks

11. For over thirty years, Vampire Family Brands, via its predecessors in interest, has been marketing and selling alcoholic beverages under its Vampire Family of marks. The Vampire Family of marks include (amongst others) the

following federal registrations, many of which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065:[1]

| **Mark** | **Reg. No.** | **Goods/Services** |
|---|---|---|
| VAMPIRE | 2263907* | Wine |
| | 3290011 | Glass- and beverage-ware |
| | 3669827* | Coffee and chocolate |
| | 3978444* | Restaurant and bar services |
| | 4776927 | Olive oil and balsamic vinegar |
| | 5444375 | Pre-mixed alcoholic beverages, other than beer based; pre-mixed alcoholic cocktails |
| VAMPYRE | 3082097* | Distilled spirits |
| VAMPYRE | 7151997 | Tea |
| DRACULA | 3319536* | Wine |
| VAMPIRE SPIRITS | 8439225 | Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic cocktails; Distilled spirits |
| DRACULA'S DAUGHTER | 7853075 | Wine; Alcoholic beverages, except beer; Sparkling wine |
| FANGRIA | 4451648* | Sangria; wine |
| VAMPIRO | 7770178 | Wine |
| VAMP | 8147317 | Non-alcoholic drinks, namely energy shots |
| SIP THE BLOOD OF THE VINE | 3079403* | Wines and Distilled Spirits |

[1] Plaintiff's marks that have become incontestable are denoted by an asterisk (*) following their U.S. Registration Numbers.

| | | |
|---|---|---|
|  | 6869456 | Wine; Alcoholic beverages except beer. |

12. The origin of Vampire wine, and Vampire Family Brand's claim of right, goes back to 1988, when its founder released a French-bottled Algerian Syrah under the brand name Vampire. The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine." Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995. Although the labels have changed over the years, along with the sourcing from Algeria to Italy and then to Transylvania and, finally, to Napa, the marketing has remained similarly playful.

13. However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was extremely good, with Vampire wine having won many gold medals throughout the years and scores of 90 Points and higher ratings from various critics.



14. Plaintiff, via its predecessors in interest, later expanded its wine business into distilled spirits, energy drinks, soft drinks, coffee and other gourmet quality products. The expansion also included the release of wines under other vampire related names, such as DRACULA, THE COUNT, VAMPIRO (Italian for vampire, and used with Plaintiff's Italian varietals, such as Sangiovese) and DRACULA'S DAUGHTER.

15. Plaintiff's VAMPIRE family of brands are available for the world to see on its website www.Vampire.com. The brands have been featured and covered in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, the Star Tribune, the Chicago Sun Times, and many more. In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper (with Ashley Greene from Twilight fame), CNN Headline News, MTV's Viva La Bam, Food TV, and many more. (*See* Exhibit B).

16. In 2017, Plaintiff began to incorporate its now trademarked Vampire Cape with its VAMPIRE cabernet sauvignon and sold it into approximately 250 Cost Plus World Market stores around the country. The Vampire Cape packaging has worked, and it seems everyone loves it. People have come to know the VAMPIRE wine brand as the wine that comes with the cape.



17. Plaintiff markets its brands through a national network of wholesalers and via www.Vampire.com direct to consumers. VAMPIRE wines are sold nationally for under $20 per bottle at retail stores. VAMPIRE wines also are available in bars and restaurants on wine lists.

18. Plaintiff has spent hundreds of thousands of dollars advertising its Vampire Family of products on Facebook, Instagram and Google and has developed an enthusiastic devoted following who have given the brand hundreds if not thousands of great reviews. Many of those review specifically refer to the Vampire Cape attached to the individual bottles of Vampire Wines.

19. Plaintiff and its associates continue to work hard to ensure that they put the best products in the bottle as possible. Over the last few years, Plaintiff's Vampire family of wines and spirits have received great reviews and won gold medals in many competitions, including the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, and Vampire Pinot Noir; the Los Angeles Invitational Wine challenge for its Vampire Cabernet Sauvignon and Vampire Pinot Noir; the Access Live Wine & Spirits Tasting Competition for its Vampire Merlot; and the Texas International Rodeo Wine Competition. Further, the Los Angeles International Wine & Spirits Competition gave Vampire Cabernet Sauvignon a rating of 92 points out of 100. Plaintiff's highest-end wine, Trueblood Cabernet Sauvignon, has been rated 92 points and 97 points out of 100 by critics. Plaintiff's Dracula's Daughter Prosecco Rose was awarded a platinum award and 98 points at the Las Vegas International Wine Competition.

20. Plaintiff continues to spend substantial amounts of time and money establishing, advertising, and promoting its Vampire family of brands. Plaintiff has established valuable goodwill through its brands' popularity, its advertising and sales, and its websites (including www.Vampire.com). This goodwill is embodied by Plaintiff's Vampire Family marks.

**B. Defendants' Unlawful Use of Plaintiff's Trademarked Vampire Cape**

21. Defendant Gallo owns trademarks of its own, including the registered trademark APOTHIC which it heavily polices against anyone that uses a gothic sounding word on a beverage or food product. One would think Defendant Gallo would know better than to use another's registered trademark to attract attention to its Apothic wine brand.

22. Apparently, in order to sell even more wine than they do, Defendants decided to copy and steal Plaintiff's Vampire Cape trademark and associate its Apothic wine – which appears to be a made-up name that rhymes with gothic – with vampires and in the process usurped Plaintiff's Vampire Cape trademark.

23. It seems Defendants have used various sized vampire capes, from a miniature size cape too short to look nice on the bottle, to a bottle sized cape – the same size and shape as Plaintiff's Vampire Cape that goes on its VAMPIRE branded wines to even full adult size vampire capes.

24. Gallo's wish for Apothic to associate with vampires has gone so far that Defendants' trade representatives even dress up wearing vampire capes to promote APOTHIC red wine bearing an infringing Vampire Cape. See Exhibit C.









25. Defendants are now selling its Apothic wine with the infringing Vampire Cape packging to numerous DOE Distributors who then sell the Apothic wine with the infringing Vampire Cape trade dress to numerous DOE Retailers, some of them national chains, such as Safeway, Kroger and Publix, all of which are making money off Plaintiff's registered trademark and trade dress and are being unjustly enriched in the process. It has been reported online that Defendant Gallo is sending out six Vampire Capes for every case of twelve bottles it sells.

26. Exhibit D shows for example pictures of Defendants' infringing packaging sold at Safeway in San Francisco, and Exhibit E shows another example of Defendants' infringing packaging – this time sold at Publix in Florida.

27. The capes are obviously meant to dramatize the Apothic wine bottles to make them stand out on the shelves to make up for the unexceptional taste of its wine. To add insult to injury, the quality of Apothic pales in comparison to the award winning VAMPIRE wines. Plaintiff takes great care to make sure its wines are of high quality for the price, and Plaintiff does not want consumers to mistakenly associate Apothic's low quality wine with Vampire wine. Furthermore, Plaintiff goes through great lengths to make sure the quality of its Vampire Capes is of the highest quality. On the other hand, Apothic's imitation Vampire Capes are cheap and nasty, and of such a low quality that Plaintiff would never consider putting them on its bottles.

28. Plaintiff advertises its wines and spirits and coffee and chocolate on Facebook, Instagram and Google, the same marketplace defendants are marketing and advertising its infringing product. Online searches for Plaintiff's VAMPIRE brand reveal Defendants' infringing product Apothic with the infringing Vampire Cape.

29. Plaintiff sells its VAMPIRE brands of products, including its VAMPIRE wine with a Vampire Cape in the same retail stores as Defendants sell its Apothic wine.

30. Defendants unlawfully promote, advertise, market and sell its infringing trade dress used on Apothic wine in Doe Defendants' retail brick and mortar stores, each of which are being unjustly enriched by selling the accused product using the infringing trade dress belonging to Plaintiff.

31. Plaintiff promotes, advertises, markets and sells its authentic VAMPIRE with Vampire Cape products from its vampire.com website, as well on third-party retailer websites who sell authentic VAMPIRE products. For example, an online ad by Cost Plus World Market appears as Exhibit F.

32. Plaintiff has spent substantial amounts of time and money building up, advertising, and promoting its VAMPIRE brands. By virtue of the popularity of its brands, its advertising, promotion, and sales, plus the popularity of its websites, including vampire.com, Plaintiff has built up and owns extremely valuable goodwill which is symbolized by Plaintiff's various marks.

33. Defendants' financial resources and ability to spend money advertising, marketing and selling their accused product dwarf's Plaintiff's resources. Defendants' intentional wrongful acts are harming Plaintiff's brands reputation and are diluting Plaintiff's brands and are disparaging.

34. If Defendants are not stopped from marketing its Apothic wine utilizing the infringing Vampire Cape, then consumers will likely be confused about the source and origin of defendants' products and mistakenly conclude that defendants' products are produced by, or associated with Plaintiff and/or its licensees.

35. Since Gallo are known for buying so many wineries, consumers might mistakenly assume Gallo bought Vampire Wines and have lowered the quality.

36. Alternatively, if defendants are not stopped from marketing its wine using Plaintiff's Vampire Cape mark, then consumers will likely be confused about the source and origin of Plaintiff's products and mistakenly conclude that Plaintiff's products are produced by, or associated with, defendants.

37. Consumers may mistakenly come to believe Plaintiff is knocking off Defendants' Apothic brand instead of Defendants knocking off Plaintiff's VAMPIRE brand, including the Vampire Cape mark.

38. Exhibit G, a LinkedIn post by a member of the wine trade demonstrates this point of reverse confusion. The post heaps praise on Gallo for such alleged creativity of using a Vampire Cape to tell a story and sell wine in the process. (Obviously the LinkedIn Member was unaware that Plaintiff had been marketing its VAMPIRE wines for years with a Vampire Cape.)

39. Exhibit H shows an Apothic customer on Facebook even referring to Apothic Wine as Vampire Wine in her hashtag.

40. The Reddit post shown as Exhibit I shows a discussion on Reddit about Apothic's infringing vampire capes, and one person within the thread tells the others that "Vampire brand wine has a better cape. You can get it at World Market for sure." (highlighted at page 5 of the post.)

41. Exhibit J shows an Instagram post from Superior Beverage Group highlighing Defendants' unlawful use of Plaintiff's Vampire trademark, while Exhibit K shows defendants' unlawful use at Kroger.

**COUNT I**

**VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)**

42. Plaintiff realleges the allegations in paragraphs 1 though 41.

43. Defendants have abundantly large resources with which to market and advertise their goods and services. Defendants' resources vastly exceed those of Plaintiff. Consequently, Defendants' marketing and advertising efforts are likely to mislead consumers into believing that Plaintiff's goods and services may be unauthorized use of trademarks that Gallo owns and its Doe Co-Defendants sell and market. If defendants can continue their wrongful acts, consumers are likely to be misled to mistakenly believe that Plaintiff is misusing the Vampire Cape mark.

44. Defendants' use of the Vampire Cape in connection with its Apothic Wine, so closely resembles Plaintiff's use of its Vampire Cape on its wines that the public is likely to be confused and deceived, and to assume erroneously that defendants' goods are those of Plaintiff, or that defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

45. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by defendants.

46. Plaintiff has no control over the nature and quality of the goods and services offered and sold by defendants or its licensees. Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's efforts to continue to protect its outstanding reputation and preventing Plaintiff from further building its reputation. Said failure, neglect, or default will result in loss of revenue by Plaintiff, and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE mark, all to the irreparable harm of Plaintiff.

47. Defendants' sales, marketing and promotional use of its infringing Vampire Cape on Apothic wine interferes with and hampers Plaintiff's ability to market and promote its VAMPIRE products including its VAMPIRE wines with the Vampire Cape online and in stores.

48. Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded using the Vampire Cape and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and/or sold, products and services using the Vampire Cape mark through persons not authorized, employed by, or associated in any way with Plaintiff and

have used the aforementioned trade dress and trademark as a false designation and false representation for beverage products.

49. None of defendants' activities complained of in this complaint have been authorized by Plaintiff, and such unauthorized use by Defendants of Plaintiff's trademarks and/or trade dress in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade dress, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

50. Upon information and belief, Defendants have acted with the unlawful purpose of:

a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

b. Soliciting Plaintiff's customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed using the Vampire Cape mark through persons and companies not authorized by, employed by, or associated in any way with Plaintiff;

c. Inducing others, including retailers, to infringe Plaintiff's trademarks and trade dress; and

d. Causing the goods of persons or companies not authorized by, employed by, or associated in any way with Plaintiff to be falsely advertised and represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade dress.

51. Defendants' conduct constitutes a violation of 15 U.S.C. § 1125(a).

52. If Defendants are allowed to continue marketing and selling and advertising Apothic wine using the Vampire Cape, Plaintiff will be damaged as

alleged in this complaint, and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants conduct as alleged in this complaint, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

53. Defendants have hijacked Plaintiff's Vampire Cape trademark. Hijacking Plaintiff's Vampire cape trademark makes defendants' Apothic wine more interesting to potential buyers, leading to greater sales than if they didn't use Plaintiff's Vampire Cape trademark. It gives Defendants' Apothic Wine an interesting talking point; otherwise it's just another unremarkable $10 wine. Hijacking Plaintiff's mark lowered defendants' costs of marketing while improving defendants' sales and profits.

54. Defendants' use of Plaintiff's Vampire Cape trademark was designed to entice consumers unfamiliar with Defendants' Apothic line of wines to sample their Apothic wine and then turn new consumers onto the Apothic brand.

55. Defendants' aforementioned acts and conduct are being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore entitled to treble damages arising therefrom, disgorgement of defendants' profits, as well as reimbursement of Plaintiff's attorneys' fees and costs.

56. The intentional and willful nature of Defendants' acts makes this an exceptional case under 15 U.S.C. §1117(a).

57. The intentional nature of Defendants' acts and conduct make this a case suitable for an award of Three Times Defendants' profits plus attorneys' fees.

**COUNT II**
**VIOLATION OF LANHAM ACT 15 U.S.C. §1114**
**(Against All Defendants)**

58. Plaintiff repeats each allegation contained in paragraphs 1 through 57 as though set forth herein at length.

59. Despite having trademarks of their own, and despite knowing the importance of having registered trademarks of their own and taking steps to protect their own trademarks, Defendants nevertheless have intentionally decided to infringe Plaintiff's registered trademark and trade dress.

60. As alleged herein, Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered Vampire Cape mark.

61. Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sale of their Apothic branded goods as packaged, advertised and promoted, using Plaintiff's Vampire Cape are those of Plaintiff, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

62. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

63. Defendants aforesaid infringing conduct has been willful and its infringing use of the Vampire Cape connected to its Apothic Wine products has been sold and offered for sale, marketed and advertised by Defendants with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their wine bearing the Vampire Cape trade dress will hinder the prospects of future commercial success of Plaintiff's VAMPIRE family of brands, including its future expansion of Plaintiff's Family of brands. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

**COUNT III**
**INDUCING TRADEMARK INFRINGEMENT**
**(Against All Defendants)**

64. Plaintiff repeats each allegation contained in paragraphs 1 through 63 as though set forth herein at length.

65. The trademark infringement shown in the Exhibits by Safeway, Kroger, Publix, Superior Beverage Group and others were brought about, caused and induced by Defendants intentional and willful decision to infringe Plaintiff's Vampire Cape trademark and trade dress, and then deal with the consequences afterwards, thinking Plaintiff would not dare sue Gallo to protect its rights.

66. Defendants provided to its distributors and/or retailers, sales materials (either physical and/or via its website) in addition to the infringing vampire cape, wrongfully using Plaintiffs' trademark and trade dress, knowing that those distributors and/or retailers would use the infringing vampire cape and place it on bottles as instructed by defendants' sales materials or on defendants' website, causing damage to Plaintiff and its Vampire Family of Brands. *Inwood Labs. Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 853-54 (1982)

67. Defendants materially encouraged, enabled, and induced these aforementioned third-parties to infringe upon the rights of Plaintiff and its Trademark and Trade Dress.

68. Defendants therefore are liable for inducing the infringement of Plaintiff's trademark and trade dress in violation of the Lanham Act, 15 U.S.C. §1114(1)(a) and §1125(a).

**COUNT IV**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**
**(Against All Defendants)**

69. Plaintiff repeats each allegation contained in paragraphs 1 through 68 as though set forth herein at length.

70. The same set of facts in Counts I through III above establish contributory infringement.

71. Defendants materially encouraged, enabled, induced and/or contributed to these aforementioned third-parties infringing upon the rights of Plaintiff and its Trademark and Trade Dress.

72. Defendants therefore are contributory liable for the infringement by these aforementioned third-parties in violation of the Lanham Act, 15 U.S.C. §1114(1)(a) and §1125(a).

**WHEREFORE, Plaintiff prays for judgment as follows:**

1. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

2. That the Court adjudge and decree that Defendants have infringed Plaintiff's registered Vampire Cape Trademark and trade dress willfully and intentionally.

3. That the Court adjudge and decree that Defendants unlawfully induced others to infringe upon Plaintiff's trademark and trade dress.

4. That the Court adjudge and decree that Defendants unlawfully contributed to the trademark infringment of Plaintiff's trademark and trade dress by retailers and distributors..

5. That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

a. Using a Vampire Cape or the word VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, (including Dracula), trademark, service mark, trade name, or other business or commercial designation in

connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories;

b. Selling, offering to sell, marketing, distributing, advertising and/or promoting any beverage product, goods or service with the use of a Vampire Cape or the word VAMPIRE or DRACULA on any product, packaging, advertising or promotional materials;

c. Representing directly or indirectly by words or conduct that any beverage product, goods or services offered for sale, sold, promoted, or advertised by Defendants, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

d. Aiding or abetting in unfair competition against Plaintiff;

e. Aiding or abetting in false advertising; and

f. Inducing others to engage in any of these aforementioned acts.

6. That the Court award an amount to be determined at trial but at least an amount equivalent to treble the amount of the greater of Plaintiff's damages or Defendants' illicit profits that Defendants have been unjustly enriched to enable Plaintiff to remedy the harm to Plaintiff's trademarks, trade dress and brands caused by Defendants' wrongful acts, and that such award include profits made by the defendants from sales of other Apothic wine varietals since they used Plaintiff's mark and trade dress to entice consumers to sample their other Apothic wines.

7. That the Court award an amount equivalent to the entirety of all the downstream profits from all sales of Apothic Wine sold with the infringing trade dress, made by both Defendants' wholesale distributors and by the ultimate retailers who sold the infringing products to consumers.

8. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising to cover a national campaign that would generate at least ten times the number of impressions of defendant's unlawful promotional campaign which would cover the cost of the

corrective advertising necessary to make up for the damage done by defendants' advertising and promotion to Plaintiff's brands.

9. That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

10. That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

11. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

**DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury on all triable issues raised by the Complaint.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated: October 20, 2026

By: *<u>/s/Michael Machat</u>*
Michael Machat, Esq.
Attorneys for Plaintiff
Vampire Family Brands, LLC